UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN D. RAKOFF,

       Plaintiff,

   v.

ST. CLAIR, CPAS, P.C., et al.,

       Defendants.

HONORABLE JOSEPH E. IRENAS

CIVIL ACTION NO. 12-5996
(JEI/JS)

**OPINION**

**APPEARANCES:**

BUDD LARNER, P.C.
By: Sonya M. Longo
1500 John F. Kennedy Parkway, CN 1000
Short Hills, NJ 07078
    Counsel for Plaintiff

ROYER COOPER COHEN BRAUNFELD L.L.C.
By: Barry L. Cohen
101 West Elm Street, Ste. 220
Conshohocken, PA 19428
    Counsel for St. Clair, CPAS, P.C.

STERNS & WEINROTH, P.C.
By: Graig P. Corveleyn
50 West State Street, Ste. 1400
P.O. Box 1298
Trenton, NJ 08067
    Counsel for Jeffrey Harrison, CPA

LIGHTMAN, MANOCHI
By: Gary Paul Lightman
   Glenn A. Manochi
8 Ranoldo Terrace
Cherry Hill, NJ 08034
    Counsel for Michael P. Rudy, CPA and Michael P. Rudy, CPA &
    Associates

1

**IRENAS**, Senior District Judge:

Plaintiff Martin D. Rakoff initiated this action against Defendants St. Clair, CPAs, P.C. ("St. Clair"); Jeffrey Harrison, CPA; Michael P. Rudy, CPA; and Michael P. Rudy, CPA & Associates (the "Rudy Firm"), alleging professional malpractice.[1]  The Complaint asserts claims against all parties for negligence, professional negligence, breach of fiduciary duty, and breach of contract.  Pending before the Court are Defendant St. Clair's Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and Defendants Rudy and the Rudy Firm's (collectively the "Rudy Defendants") Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6).  For the reasons discussed below, St. Clair's Motion will be denied, and the Rudy Defendants' Motion will be granted.

## I.

In April 2008, Plaintiff retained St. Clair to prepare his 2007 personal income tax returns.  (Compl. ¶ 17.)  At this time, Plaintiff owned four residential properties.  (Compl. ¶ 12.)  These properties were located in: Glenmore, Pennsylvania; Poughkeepsie, New York; Ocean City, NJ; and New Middletown, Ohio.  (Compl. ¶¶ 12-15.)  Plantiff's Complaint identifies the Ohio

---

[1] Subject matter jurisdiction is based on diversity of citizenship.  *See* 28 U.S.C. § 1332(a).  Plaintiff is a citizen of Ohio, while Defendant St. Clair is a citizen of Pennsylvania, Defendant Harrison is a citizen of New York, and Defendant Rudy and his firm are citizens of Pennsylvania.  (Compl. ¶ 4-8.)  The amount in controversy is alleged to exceed $75,000.  (Compl. ¶ 2).

residence as his current domicile (Compl. ¶ 12), and the New York residence as his primary residence in 2007.  Plaintiff purchased the New Jersey property in 2002.  (Pl.'s Aff. in Opp. to Rudy ¶ 5.)[2]

According to Plaintiff, while Plaintiff advised St. Clair that he owned residential property in four states, St. Clair did not discuss with Plaintiff his indicia of residency in each state.  (Compl. ¶¶ 18-19.)  Instead, St. Clair allegedly determined that Plaintiff's smallest tax liability would be in Pennsylvania, and therefore advised Plaintiff to claim Pennsylvania as his residential state.  (Compl. ¶¶ 19-20.)  On November 10, 2008, St. Clair allegedly filed resident Pennsylvania and nonresident New York State personal income tax returns for 2007 on Plaintiff's behalf.  (Compl. ¶ 22.)

In December 2009, Plaintiff was notified by the New York State Department of Taxation and Finance that his 2007 nonresident income tax return was the subject of an audit (the "audit").  (Compl. ¶ 24.)  Plaintiff retained Defendant Harrison to advise him concerning the audit in January, 2010, and executed a power of attorney with Harrison.  (Compl. ¶ 27.)  According to Plaintiff, Harrison allegedly failed to communicate consistently with Plaintiff regarding the audit.  (Compl. ¶ 32.)

---

[2]  Citations in this form are to the "Affidavit of Martin D. Rakoff in Opposition to the Rudy Defendants' Motion to Dismiss," which is attached to the Plaintiff's "Brief in Opposition to the Rudy Defendants' Motion to Dismiss."

Specifically, Plaintiff alleges that Harrison did not advise Plaintiff about New York's residency requirements (Compl. ¶ 28), did not consent to residency related audit changes required by the New York State Department of Taxation and Finance (Compl. ¶ 29), failed to file an amended return in Pennsylvania indicating Plaintiff's non-resident status in that state and seeking a return of unnecessarily paid taxes (Compl. ¶ 30), and failed to inform Plaintiff of the statute of limitations for filing an amended return in Pennsylvania, which expired in November 2011. (Compl. ¶ 31).

As a result of Harrison's alleged mishandling of Plaintiff's audit, Plaintiff hired Defendant Rudy to serve as a substitute accountant in January 2011.  (Compl. ¶¶ 32, 36.)  Plaintiff stated in an affidavit that prior to this hiring, Rudy had been providing tax and accounting advice to Plaintiff on other matters since the year 2000.  (Pl.'s Aff. in Opp. to Rudy ¶ 6.) Plaintiff's Complaint alleges that Rudy committed much of the same misconduct as Harrison.  Specifically, Plaintiff alleges that Rudy did not consent to residency related audit changes required by the New York State Department of Taxation and Finance (Compl. ¶ 37), did not file an amended tax return in Pennsylvania (Compl. ¶ 39), and did not advise Plaintiff of the statute of limitations for filing such an amended return. (Compl. ¶ 38.)

Rudy is a Pennsylvania Certified Public Accountant.  (Compl.

¶ 7.)   The Rudy Firm is located at 3521 E. Lincoln Highway in Thorndale, Pennsylvania. The Rudy Defendants operate a website, **www.mrcpa.net.**   The website includes information about the Rudy Firm, such as employee biographies and general tax information. (Pl.'s Br. in Opp. to Rudy, Ex. A-G.)   The website also includes forms which visitors can use to contact the Rudy Firm, such as a general contact form, a form for requesting a quote, and a form for scheduling an appointment.  (Pl.'s Br. in Opp. to Rudy, Ex. A-G.)   There is a link to the New Jersey Department of Taxation on the bottom of a page entitled "Tax Information."  (Pl.'s Br. in Opp. to Rudy, Ex.C.)   This link is the only mention of New Jersey on the Rudy Firm's website.

The Rudy Firm's website is accessible in all states, including New Jersey.  However, Rudy stated in an affidavit that he routinely rejects online inquiries from non-Pennsylvania residents, and that less than one percent of the Rudy Firm's annual revenue is derived from the filing of New Jersey tax returns.  (Rudy's Second Aff. ¶¶ 13, 26).[3]

Plaintiff initiated the instant litigation by filing his Complaint on September 24, 2012.  Defendant St. Clair filed a

---

[3]  Citations in this form are to the "Second Affidavit of Michael P. Rudy and Michael P. Rudy, CPA & Associates in Further Support of their Motion to Dismiss Plaintiff's Complaint," attached to the Rudy Defendants' "Reply Memorandum of Law in Further Support of Their Motion to Dismiss Plaintiff's Complaint."

Motion to Dismiss the Complaint for failure to state a claim on November 29, 2012, and the Rudy Defendants filed a Motion to Dismiss the Complaint for lack of personal jurisdiction and failure to state a claim on December 28, 2012.  Plaintiff has asked the Court to allow jurisdictional discovery if the Court finds that Plaintiff has not satisfied his burden to show the Court has personal jurisdiction over the Rudy Defendants.  (Pl.'s Br. in Opp. to Rudy at 24.)

## II.  St. Clair's Motion to Dismiss

## A.  Fed. R. Civ. P. 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that

6

the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

In deciding a motion to dismiss, the Court can only consider the allegations contained in the Complaint, matters of public record, orders, and exhibits attached to the Complaint. *See Smajlaj v. Campbell's Soup Co.*, 782 F. Supp. 2d 84, 92 (D.N.J. 2011) (citing *Chester Cnty. Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990)). Consequently, in cases where a defendant argues that a claim is barred by a statute of limitations, "a court may dismiss an action if the complaint shows facial noncompliance with the statute of limitations." *Wolk v. Olson*, 730 F. Supp. 2d 376, 377 (E.D.P.A. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007), and *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994)).

## B.   <u>Tort Claims Against St. Clair</u>

Counts One, Four, and Ten of Plaintiff's Complaint assert tort claims against St. Clair. Specifically, Count One alleges ordinary negligence, Count Four alleges breach of fiduciary duty, and Count Ten alleges professional negligence and malpractice.

(Compl. ¶¶ 42-47, 60-66, 99-107.)  St. Clair seeks to dismiss these claims.  St. Clair argues that Pennsylvania law governs, and that these claims are not timely under Pennsylvania's two year statute of limitations for tortious conduct.  (St. Clair's Br. at 5-12.)[4]  In response, Plaintiff argues that New Jersey law governs, and that the claims are timely under New Jersey's six year statute of limitations.  (Pl.'s Br. in Opp. to St. Clair at 10-12.)[5]  Plaintiff further argues that even if Pennsylvania law applies, his claims are timely.  (Pl.'s Br. in Opp. to St. Clair at 13-15.)

The Court does not need to decide at this stage whether Pennsylvania or New Jersey law applies because, either way, the Court cannot dismiss Plaintiff's tort claims.  Clearly, under New Jersey law, Plaintiff's claims are not time barred.  New Jersey has a six year statute of limitations for accounting malpractice. *See* N.J.S.A. § 2A:14-1; *Arnold v. KPMG LLP*, 945 A.2d 132, 145-46 (N.J. Super. Ct. Law Div. 2007).  Plaintiff filed his Complaint on September 24, 2012.  Therefore, only claims accruing prior to September 24, 2006 would be time barred.  In this case, Plaintiff did not even retain St. Clair to prepare his tax returns until

---

[4]  Citations in this form are to St. Clair's Brief in Support of its Motion to Dismiss Plaintiff's Complaint, filed on November 29, 2012.

[5]  Citations in this form are to Plaintiff's Brief in Opposition to Defendant St. Clair, CPAS, P.C.'s Motion to Dismiss the Complaint, filed on January 8, 2013.

April 2008, and all alleged malpractice occurred after that date. (Compl. ¶ 17).

Under Pennsylvania law, tort claims for accounting malpractice are subject to a two year statute of limitations. *See* Pa. C.S.A. § 5524; *Baehr v. Touche Ross & Co.*, 62 B.R. 793 (E.D.Pa. 1986). Nonetheless, even assuming Pennsylvania law governs Plaintiff's tort claims, the Court cannot dismiss these claims at this stage.

To determine when a statute of limitations begins to run, Pennsylvania courts generally apply the occurrence rule. *See Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 674 A.2d 244, 246 (Pa. Super. Ct. 1996). Under the occurrence rule, "the statute of limitations is 'triggered upon the occurrence of the alleged breach of duty.'" *In re CITX Corp, Inc.*, 2004 WL 2850046, at *3 (quoting *Bigansky v. Thomas Jefferson Univ. Hospital*, 658 A.2d 423, 426 (Pa. Super. Ct. 1995)); *see also Knopick v. Connelly*, 639 F.3d 600, 607 (3d Cir. 2011) ("The trigger for the accrual of a legal malpractice action is not the realization of actual loss, but the occurrence of a breach of duty.").

In certain cases, however, the Pennsylvania courts recognize exceptions to the occurrence rule which toll the statute of limitations. *See Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). One such exception is the discovery rule. *Id*. "The discovery

rule originated in cases in which the injury or its cause was neither known nor reasonably knowable." *Id*.  The purpose of the discovery rule is "to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured." *Id*.  As the discovery rule has developed, "the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Id*.  Reasonable diligence "is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised." *Id*.  Tolling under the discovery rule ceases when the plaintiff has "sufficient critical facts to place him on notice that a wrong has been committed against him and that prudence dictates further investigation into the matter." *Andritz Sprout-Bauer, Inc. v. Beazer East, Inc.*, 12 F. Supp. 2d 391, 415 (M.D.Pa. 1998).

In the instant case, St. Clair concedes that the discovery rule applies.  (St. Clair's Br. at 9-10.)  However, St. Clair argues that even under the discovery rule, Plaintiff should have become aware of any alleged malpractice on December 6, 2009, when he received a notice of audit from the New York State Department of Taxation and Finance.  (St. Clair's Br. at 10.)  The Court disagrees.  As courts in at least one other jurisdiction have

recognized, there are "many different possible fact scenarios in the cumbersome, maze-like world of taxes and accountants." *Kennedy v. Goffstein*, 815 N.E.2d 646, 650 (Mass. App. Ct. 2004). Thus, while "in one case it might be readily apparent from an audit letter that malpractice had been committed," in other cases "knowledge of negligence and consequent harm might become evident after the audit was completed." *Id*.

The Complaint does not address whether Plaintiff became aware of St. Clair's malpractice when he was advised that his tax return was going to be the subject of an audit. Further, the Complaint does not describe what Plaintiff was told by the New York State Department of Taxation and Finance when he was advised of the audit. Consequently, the Court cannot determine from the face of the Complaint whether in this case the audit letter provided Plaintiff with "sufficient critical facts to place him on notice" of St. Clair's alleged malpractice. *See Andritz Sprout-Bauer,* 12 F. Supp. 2d at 415. Therefore, St. Clair's Motion to Dismiss is denied as to Counts One, Four and Ten of Plaintiff's Complaint.

## C.  Contract Claims Against St. Clair

Count Seven of the Complaint asserts a breach of contract claim against St. Clair. St. Clair argues that this claim must be dismissed because Plaintiff materially breached the contract by failing to pay St. Clair in 2007. (St. Clair's Br. at 12.)

Consequently, St. Clair argues that Plaintiff cannot claim that St. Clair failed to perform under the contract.  (St. Clair's Br. at 12.)

The Complaint does not address at what point, if ever, Plaintiff ceased paying St. Clair for preparing the 2007 tax returns.  Addressing St. Clair's argument would thus require the Court to consider more than the allegations contained in the Complaint, matters of public record, orders, and exhibits attached to the Complaint.  *See Smajlaj*, 782 F. Supp. 2d at 92 (D.N.J. 2011) (citing *Chester Cnty. Intermediate Unit,* 896 F.2d at 812 (3d Cir. 1990)).  Such considerations are inappropriate in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Therefore, St. Clair's Motion to Dismiss is denied as to Count Seven of the Complaint.

### III.   Rudy Defendants' Motion to Dismiss

### A.   Fed. R. Civ. P. 12(b)(2) Standard

Plaintiff bears the burden of presenting evidence establishing a prima facie case of personal jurisdiction over each defendant.  *Miller Yacht Sales, Inc. v. Smith*, 384 F. 3d 93, 94 (3d Cir. 2004).  "'[P]laintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence. . . .  At no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of

personal jurisdiction.  Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.'" *Machulsky v. Hall*, 210 F. Supp. 2d 531, 537 (D.N.J. 2002) (quoting *Patterson v. Fed. Bureau of Investigation*, 893 F.2d 595, 603-04 (3d Cir. 1990)).

The framework for analyzing jurisdiction over the parties is well known.  A federal court sitting in New Jersey has jurisdiction over the parties to the extent provided under New Jersey state law.  *See* Fed. R. Civ. P. 4(e).  New Jersey courts may exercise personal jurisdiction to the extent permitted by the United States Constitution.  *Miller Yacht Sales*, 384 F. 3d at 96.

Due process requires that each defendant have "minimum contacts" with the forum state (in this case New Jersey) and that the Court's exercise of jurisdiction over the parties comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "Minimum contacts must have a basis in 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *Asahi Metal Indust. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

Within this framework, personal jurisdiction may be examined under two distinct theories: general and specific jurisdiction.

*See Remick v. Manfredy*, 238 F. 3d 248, 255 (3d Cir. 2001). "General jurisdiction is based upon the defendant's continuous and systematic contacts with the forum and exists even if the plaintiff's cause of action arises from the defendant's non-forum related activities." *Id.* at 255 (citations omitted). The Third Circuit "requires a very high showing before a court may exercise general jurisdiction." *Snyder v. Dolphin Entertainers Ltd.*, 235 F. Supp. 2d 433, 437 (E.D.Pa. 2002) (citing *Gehling v. St. George's School of Medicine, Ltd.*, 773 F. Supp. 2d 539, 542 (3d Cir. 1985). A "plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." *Provident Nat'l Bank,* 819 F.2d 434, 437 (3d Cir. 1987). When evaluating a business's ties to a state for purposes of general jurisdiction, "a court should not necessarily focus on the percentage of income that a corporation derives from those affiliations; rather, the court should look to the party's 'purposeful and extensive availment' of a forum." *Molnlycke Health Care AB v. Dumex Medical Surgical Products LTD.*, 64 F. Supp. 2d 448, 450 (E.D.Pa. 1999) (quoting *Provident*, 819 F.2d at 437). Additionally, "[a] court should also consider the degree to which a corporation's contacts with a given forum are 'central to the conduct of its business.'" *Molnlycke*, 64 F. Supp. 2d at 450 (quoting *Provident*, 819 F.2d at 438).

In contrast with general jurisdiction, "specific

14

jurisdiction is present only if the plaintiff's cause of action arises out of defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Remick*, 238 F.3d at 255 (citations omitted).  "A 'relationship among the defendant, the forum, and the litigation' is the essential foundation" of specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

If it is determined that a defendant has purposefully established minimum contacts with the forum state, then it remains to be determined if exercise of specific jurisdiction would be reasonable and "comport with notions of fair play and substantial justice." *Asahi Metal*, 480 U.S. at 113.  This determination requires evaluation of several factors, including the burden on the defendant, the interest of the forum state in resolving the dispute, and the plaintiff's interest in obtaining relief.  *Id.*

In cases involving an out of state defendant who operates a website accessible in the forum state, whether the forum state may exercise jurisdiction over the defendant depends on "the nature and quality of commercial activity that the entity conducts over the Internet."  *Toys "R" Us, Inc*. v. *Step Two, S.A.*, 318 F.3d 446, 453 (3d Cir. 2003).  To assess the nature and

15

quality of such commercial activity, the Third Circuit has adopted the framework outlined by the Western District of Pennsylvania in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*.  *See Spuglio v. Cabaret Lounge*, 344 Fed. Appx. 724, 725 (3d Cir. 2009).  The *Zippo* court analyzed the commercial activity of websites on a sliding scale, broadly classifying websites into three categories:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.  At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

952 F. Supp. 1119, 1124 (W.D.Pa 1997) (internal citations and quotations omitted).

Thus, under *Zippo*, "the mere operation of a commercially interactive website should not subject the operator to jurisdiction anywhere in the world."  *Toys "R" Us*, 318 F.3d at 454.  Instead, "there must be evidence that the defendant purposefully availed itself of conducting activity in the forum

16

state, by directly targeting its website to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id*.

While in *Zippo* the Western District of Pennsylvania utilized the sliding scale framework to determine whether it had specific jurisdiction over the plaintiff's claim, "a court may also apply the *Zippo* framework in cases where the plaintiff asserts general jurisdiction." *Roscoe v. P.O.W. Network*, 2010 WL 3906793, at *5 (D.N.J. 2010). However, "[t]he advent of the internet did not alter the Third Circuit's requirement that the plaintiff make a very high showing before a court exercises general personal jurisdiction over a non-resident defendant." *Snyder*, 235 F. Supp. 2d at 439. Therefore, plaintiffs relying on the *Zippo* framework to assert general jurisdiction "have a tough hill to climb, as courts regularly decline to exercise general jurisdiction based on this framework, even with interactive web sites." *Gianfredi v. Hilton Hotels Corp., Inc.*, 2010 WL 1381900, at *5 (D.N.J. 2010).

For example, in *Molnlycke Health Care AB v. Dumex Medical Surgical Products Ltd.,* the Eastern District of Pennsylvania held that "the establishment of a website through which customers can order products does not, on its own, suffice to establish general jurisdiction." 64 F. Supp. 2d 448, 451 (E.D.Pa. 1999). According to the Eastern District of Pennsylvania, "[t]o hold

17

that the possibility of ordering products from a website
establishes general jurisdiction would effectively hold that any
corporation with such a website is subject to general
jurisdiction in every state." *Id*.

**B.   General Jurisdiction Over the Rudy Defendants**

The Court lacks general jurisdiction over the Rudy
defendants.

Plaintiff argues that the Rudy Firm's website,
www.mrcpa.net, is an "interactive website designed to actively
solicit business from New Jersey residents," giving the Court
general jurisdiction over the Rudy defendants.  (Pl.'s Br. in
Opp. to Rudy at 16.)  The Court disagrees.  Although the Rudy
Firm's website does have certain interactive features, such as a
general contact form which visitors can use to send questions or
suggestions to the Rudy Firm,  (Pl.'s Br. in Opp. to Rudy, Ex.
F,) a page through which visitors can request a free quote,
(Pl.'s Br. in. Opp. to Rudy, Ex. E,) and a page where visitors
can setup an appointment with the Rudy Firm,  (Pl.'s Br. in Opp.
to Rudy, Ex. D, G.), unlike in *Molnlycke*, none of these pages
even allows the visitor to purchase products or services from the
Rudy Firm, or otherwise enter into contracts with the Rudy Firm.
Therefore, the establishment of the Rudy Firm's website, on its
own, cannot possibly suffice to establish general jurisdiction.
*See Molnlycke*, 64 F. Supp. 2d at 451.  In order to find general

18

jurisdiction, the Court must determine if the Rudy Defendants have "sufficient other related contacts" with New Jersey.

To this end, the Court first notes that the interactive portions of the Rudy Firm's website are not at all targeted to New Jersey.  In fact, none of these pages makes mention of any specific state.  The only mention of New Jersey on the Rudy Firm's website is a link on the bottom of one page to the New Jersey Division of Taxation.  (Pl.'s Br. in Opp. to Rudy, Ex. C.) It can hardly be said on the basis of this one mention of New Jersey that the Rudy Firm has directly targeted its website to New Jersey.  *See Toys "R" Us*, 318 F.3d at 454.

Second, Plaintiff has not proved that the Rudy Defendants have engaged in any advertising beyond the Rudy Firm website targeted at New Jersey.  Rudy stated in an affidavit that neither he nor the Rudy Firm have advertisements targeted towards New Jersey.  (Rudy's Second Aff. ¶ 5).  While Plaintiff contests Rudy's statement, Plaintiff does so solely on the basis that the Rudy Firm's website is targeted at New Jersey, (Pl.'s Br. in Opp. to Rudy at 16,) an argument which the Court has already rejected.

Lastly, Plaintiff has also failed to show that either the website or the state of New Jersey is central to the Rudy Defendants' business.  The Rudy Defendants' affidavits state that between 2006 and 2011, the Rudy Firm prepared between seven and eleven New Jersey state tax returns on an annual basis, (Rudy's

19

Second Aff. ¶ 23), that the income derived from these tax returns is far less than one percent of the Rudy Firm's annual business revenue (Rudy's Second Aff. ¶ 26), and that Rudy has not traveled to New Jersey to prepare any of the New Jersey returns. (Rudy's First Aff. ¶ 22.)  Plaintiff does not contest the truth of any of Rudy's statements.  However, Plaintiff does characterize the income the Rudy Defendants receive from New Jersey tax work as "consistent annual revenue."  (Pl.'s Opp. to Rudy at 18.)  Despite the Plaintiff's characterization, as the Eastern District of Pennsylvania stated in *Molnlycke*, "without some other indication of the quality and nature of the business with [the forum state], it is impossible for the court to find that the small percentage of sales constitute continuous and systematic business within the forum state."  64 F. Supp. 2d 448, 452.

On these facts, a finding that the Court has general jurisdiction over the Rudy Defendants would "effectively hold that any [business] with such a website is subject to general jurisdiction in every state."  *Molnlycke*, 64 F. Supp. 2d at 451.  Therefore, the Court holds that it does not have general personal jurisdiction over the Rudy Defendants.

## C.  Specific Jurisdiction Over the Rudy Defendants

In contrast with the general jurisdiction analysis above, in the context of specific jurisdiction the Rudy Firm's website is not immediately relevant.  Plaintiff nowhere asserts that he

20

learned of the Rudy Firm by accessing the Rudy Firm's website in New Jersey.  In fact, Plaintiff stated that he first retained the Rudy Defendants in 2000, which is two years prior to Plaintiff's purchase of his New Jersey property.  (Pl.'s Aff. in Opp. to Rudy ¶¶ 5-6.)  Therefore, it is clear that Plaintiff's cause of action against the Rudy Defendants does not arise out of the accessibility of the Rudy Firm's website in New Jersey.  *Remick*, 238 F.3d at 255 ("Specific jurisdiction is present only if the plaintiff's cause of action arises out of defendant's forum related activities.").

The Court is also convinced that Plaintiff's Cause of Action does not arise from any of the Rudy Defendants' other New Jersey contacts.  Plaintiff argues that specific jurisdiction is appropriate because the Rudy Defendants had been providing tax work to the Plaintiff since the year 2000, part of that tax work involved Plaintiff's New Jersey property, and Plaintiff decided to hire Rakoff to handle the New York audit as a result of this "ongoing advisory relationship."  (Pl.'s Br. in Opp. to Rudy at 17.)

This argument is unpersuasive.  The Court does not doubt that the fact that Plaintiff had worked with the Rudy Defendants in the past played some role in the Plaintiff's decision to hire Rudy in this case.  However, it strains credulity to believe that Plaintiff's decision had anything to do with the Rudy Defendants'

specific work pertaining to Plaintiff's New Jersey property.  No New Jersey tax returns are at issue in this case, Plaintiff's New Jersey property is just one of four properties Plaintiff owned during the relevant time period, Plainitiff has never identified the New Jersey property as a primary residence, and no tax work regarding the New Jersey property is at all at issue in the instant litigation.  Moreover, Plaintiff has provided no evidence as to what type of work the Rudy Defendants ever performed relating to the New Jersey property, or explained why this work would have led Plaintiff to hire the Rudy Defendants to handle the audit.

Because Plaintiff's cause of action against the Rudy Defendants does not arise from any of the Rudy Defendants contacts with New Jersey, the Court lacks specific personal jurisdiction over the Rudy Defendants.

**D.  <u>Jurisdictional Discovery</u>**

Plaintiff has asked the Court to allow jurisdictional discovery in the event the Court finds that Plaintiff has not satisfied his burden of showing that the Court has personal jurisdiction over the Rudy Defendants.  (Pl.'s Br. in Opp. to Rudy at 24.)  In the Third Circuit, "although the Plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly

frivolous." *Toys "R" Us*, 318 F.3d at 456 (internal citations and quotations omitted).  Thus, while leave to conduct jurisdictional discovery should be "freely granted," "the scope of this discovery is within the court's discretion, and allowing such discovery is premised on the assumption that further discovery would be worthwhile." *Molnlycke*, 64 F. Supp. 2d at 454.

In the instant case, the Court concludes that allowing further discovery would not be worthwhile.  Plaintiff argues that jurisdictional discovery should be granted because the Rudy Defendants did not file a Corporate Disclosure Statement which would have included information "such as the identification of the parent corporation of [the Rudy Firm] or any publicly held corporation owning 10% or more of its stock, the places of incorporation of those companies, and the locations of the various offices of those corporations."  (Pl.'s Br. in Opp. to Rudy at 26).  The Rudy Defendants have since filed a Corporate Disclosure Statement which states that the Rudy Firm "does not have a parent corporation, nor is there any publicly held corporation that owns 10% or more" of the Rudy Firm's stock. (Corp. Disclosure Stmt., Dkt. No. 26.)  Therefore, ordering jurisdictional discovery based on the lack of a corporate disclosure statement at this point would be frivolous.

Plaintiff also argues that jurisdictional discovery should be granted "with respect to the Rudy defendants' interactive

website, business generated in New Jersey from the website, non-internet business and revenues generated by the Rudy defendants, and all other general New Jersey tax advice and services provided by the Rudy defendants." (Pl.'s Br. in Opp. to Rudy at 26.) Such jurisdictional discovery would amount to no more than a fishing expedition. The Court has already considered all aspects of the Rudy Firm's website. Moreover, the Rudy Defendants' affidavits state that less than one percent of the Rudy Firm's annual business revenue is derived from preparing New Jersey tax returns, (Rudy's Second Aff. ¶ 26,) that the Rudy Firm's business is based solely in Pennsylvania, and that the vast majority of individual tax returns filed consist of Pennsylvania and Delaware returns. (Rudy's Second Aff. ¶ 16.) Plaintiff does not provide the Court with any reason to question the truth of these sworn statements by the Rudy Defendants. Consequently, the Court will exercise its discretion and deny the request for further discovery. *See Molnlycke*, 64 F. Supp. 2d at 454.

**E.  <u>Rudy Defendants' Fed. R. Civ. P. 12(b)(6) Motion</u>**

Because the Court has found that it does not have personal jurisdiction over the Rudy Defendants, it does not need to consider the Rudy Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

**IV.**

For the foregoing reasons, St. Clair's Motion to Dismiss is

hereby denied, and the Rudy Defendants' Motion to Dismiss is hereby granted.  An appropriate Order will accompany this Opinion.


Dated: March __12__, 2013          ____s/Joseph E. Irenas____

                                   **Joseph E. Irenas, S.U.S.D.J.**

25